**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 6 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHARON K. GREEN,

       Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

       Defendant-Appellee.

No.  02-6290
(D.C. No. 01-CV-1150-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**  *

---

Before  **SEYMOUR** , **HENRY** , and  **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sharon K. Green appeals from the district court's order affirming the Commissioner of Social Security's decision to deny Mrs. Green's application for disability insurance benefits. Mrs. Green based her application on recurrent chest pains and shortness of breath, back pain, knee pain, headaches, and asthma. The application was denied on initial consideration and after a *de novo* hearing held before an administrative law judge (ALJ). Mrs. Green appealed the ruling to the district court, which referred the matter to a magistrate judge. The district court adopted the magistrate judge's eighteen-page report and recommendation and affirmed the Commissioner's ruling. Our jurisdiction arises under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we reverse and remand.

I.

We review the Commissioner's decision (here expressed as the ruling of the ALJ, *see Hargis v. Sullivan*, 945 F.2d 1482, 1484 (10th Cir. 1991)), to determine whether the ALJ's factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). But "[e]vidence is not substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating

-2-

physicians) or if it really constitutes not evidence but mere conclusion." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (quotations omitted).

## II.

The procedural and factual history of this case is well documented in the findings and recommendations of the magistrate judge filed February 6, 2001, and we need summarize it here only briefly. After reviewing Mrs. Green's medical records and hearing her testimony and that of a vocational expert, the ALJ determined that Mrs. Green's complaints of disabling back pain were not credible and concluded at step four of the sequential evaluation process that Mrs. Green could perform her past work as a loan processor and bank teller. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (setting forth the sequential evaluation process).

In the alternative, the ALJ concluded at step five that Mrs. Green retained the residual functioning capacity to perform either a limited range of light work or sedentary work, and was not disabled.

## III.

Mrs. Green raises five issues on appeal. Both in her appeal to the district court and on appeal to this court she contends that the ALJ (1) did not properly consider her treating physician's opinion, (2) ignored her obesity limitations, and

(3) failed to properly evaluate the medical record when determining her residual functional capacity. She also asserts that the ALJ erred (4) in determining that her impairments did not meet any listing contained in Appendix 1 to Subpart P of Part 404 of the social security regulations. *See* 20 C.F.R. 404.1520(d) & Pt. 404, Subpt. P, App. 1. Finally, Mrs. Green contends that the ALJ erred (5) by applying the vocational guidelines located in Appendix 2 to Subpart P of Part 404 of the regulations to determine at step five whether there is work that she can perform that exists in the economy in significant numbers. The magistrate judge carefully considered and addressed most of Mrs. Green's arguments, and nothing in Mrs. Green's appellate brief demonstrates error in the magistrate judge's stated reasoning. We therefore reject issues (2)-(5), *supra*, as a basis for reversal for substantially the same reasons stated in the magistrate judge's report and recommendations dated August 15, 2002.

We note, however, that the magistrate judge did not address Mrs. Green's argument that the ALJ failed to properly consider Dr. Rhinehart's reports and opinions. [1] *See Goatcher v. United States Dep't of Health & Human Servs.*,

---

[1] While the magistrate judge's report does discuss Dr. Rhinehart's records and reports, we note that the magistrate judge mistakenly believed that an RFC Assessment form was subsequently prepared by Dr. Rhinehart, when in fact the form was prepared by Dr. Woodcock, the State's medical consultant. This form expressed the opinion that Mrs. Green could stand/walk six hours in an eight-hour day and sit about six hours in an eight-hour day. Thus the magistrate judge may

(continued...)

52 F.3d 288, 289-90 (10th Cir. 1995) (holding that an ALJ commits reversible error if the ALJ fails to provide specific reasons for rejecting opinions and assessments of a claimant's treating physician). Dr. Rhinehart is a neurosurgeon who treated Mrs. Green in October and December 1999. After examining her and fully reviewing Mrs. Green's medical history and records, Dr. Rhinehart diagnosed "right trochanteric bursitis," for which he gave her a local steroidal injection for pain, and "lumbar radiculopathy with some stenosis," for which he ordered a series of epidural injections for lower-back pain management. Aplt. App. at 262-65.

On December 23, 1999, Dr. Rhinehart reported that the epidural injections gave "transient relief but perhaps some 30-40% overall improvement," but stated that her chronic lumbar degenerative disease and hip problems were not improved sufficiently "for her to return to full gainful employment" despite the injections for pain relief. *Id.* Dr. Rhinehart stated that Mrs. Green's degenerative pathology was not "curable" and recommended she take narcotics two to three times per day to help her be more functional. *Id.*

---

[1](...continued)
have believed that the January 2000 RFC assessment superceded Dr. Rhinehart's December 1999 opinion that Mrs. Green could not return to full-time gainful employment.

The ALJ did not discuss these findings or specifically discuss Dr. Rhinehart's reports or opinion that Mrs. Green could not return to work. The ALJ also did not discuss a January 2000 report from Dr. Rosson, a consulting physician, stating that Mrs. Green had a limited range of motion and muscle spasms in her lower back, decreased muscle strength in her right leg, positive straight leg raising on both legs, evidence of "persistent discogenic injury and chronic musculoligamentous injury, with residual neurosensory injury," and a permanent partial impairment of 31% to the whole person due to the lower back problems. Aplee. App. at 261-63. Nor did the ALJ refer to or discuss the subsequent records from treating physician Dr. Webb, a family physician who treated Mrs. Green for chronic low back pain twice, on August 28, 2000 and September 26, 2000. *See* Aplt. App. at 32-33 (ALJ decision); Aplee. App. at 3 (listing medical exhibits by care giver).

On September 26, 2000, Dr. Webb noted that Mrs. Green had weakness in both legs and decreased flexion and extension in her lumbar spine, and prescribed more pain and arthritis medication for her. *Id.* at 296. Instead of discussing the most recent reports specifically related to treatment of Mrs. Green's degenerative lumbar disc disease, the ALJ relied on (1) hospital records and reports by Dr. McCown related to Mrs. Green's 1998 knee surgery (Ex. 3F, 10F); (2) a November 1999 report from Dr. Marshall, the physician who

performed the epidural injections and stated that the first one had given

Mrs. Green some temporary relief (Ex. 9F); (3) medical records from 1998-1999

and a December 1999 statement by Dr. Forren, one of Mrs. Green's family

doctors who performed an RFC assessment and referred Mrs. Green to

Dr. Rhinehart for her back problems (Ex. 14F, 18F); (4) medical records from

February–May 2000 from Dr. Lynn, Mrs. Green's subsequent family physician

(Ex. 15F); and (5) a report by treating cardiologist, Dr. Scott, dated September 26,

2000, which stated that Mrs. Green had no evidence of muscle spasms (Ex. 19F),

to conclude that Mrs. Green had "experienced good response to [conservative]

treatments for her lumbar problems." Aplt. App. at 32. The ALJ relied on three

of these same exhibits (10F, 18F, and 19F) to conclude that Mrs. Green "retains

the residual functional capacity to perform a slightly reduced range of light

exertional range of work." *Id.* at 33. By failing to discuss and expressly consider

the treating specialist's opinion and the treating physicians' records most relevant

to the degenerative spine disease and to weigh them against other medical

evidence, the ALJ committed reversible error. *See Goatcher*, 52 F.3d at 289-90.

We reject appellee's arguments that Dr. Rhinehart's opinion that

Mrs. Green could not return to gainful employment is contradicted by his own

treatment records. His opinion is also supported by the MRIs and the records and

findings of other treating physicians. We further reject appellee's suggestion that

during the time period between February 2000 and August 2000, Mrs. Green did not complain of low back pain. The medical records from that period reveal a diagnosis of osteoarthritis and "lumbar spondylosis with chronic pain," with her treating physicians instructing her to continue her medications, including narcotic pain medication. *See, e.g.*, Aplee. App. at 282, 285.

Based on our whole record review and the ALJ's failure to give specific, legitimate reasons for rejecting the treating neurosurgeon's opinion of disability, we conclude that the Commissioner did not apply correct legal standards and that the Commissioner's decision is not supported by substantial evidence.

The judgment of the United States District Court for the Western District of Oklahoma is REVERSED and the case is REMANDED for additional proceedings consistent with this order.

Entered for the Court


Stephanie K. Seymour
Circuit Judge